## WHALEY v. BARTLETT.

1. GROUNDS FOR NONSUIT—APPEAL.—This court is not bound to consider exceptions alleging specific errors in an order refusing a motion for nonsuit, where the "Case" does not disclose the grounds upon which the motion was based and refused. The proper practice indicated.

2. A NONSUIT cannot be ordered where there is any evidence tending to prove the plaintiff's cause of action; the trial judge cannot pass upon its sufficiency or weight. There being some evidence in this case to support plaintiff's complaint, that he was injured by the carelessness or negligence of defendant's representative in failing to use proper appliances, and to provide the necessary number of laborers, a nonsuit was properly refused.

3. IBID.—CONTRIBUTORY NEGLIGENCE.—The question of contributory negligence is a matter of fact to be passed upon by the jury, and cannot be considered by the judge on a motion for non-suit.

4. IBID.—FELLOW-SERVANTS.—Whether the accident resulted from the act of plaintiff's fellow-laborers in too soon quitting their hold of the weight whose fall produced the injury, was a question of fact for the jury and not for the judge; and, besides, the evidence was, that they did not let go until their own safety required them to do so.

5. NEGLIGENCE—MASTER AND SERVANT.—Where the injury is negligently done by a representative, "the foreman," of the master, it is the act of the master himself, and it is then immaterial whether the foreman and men were habitually negligent, or the master knew, or had reason to suspect, that they would be negligent.

6. NEGLIGENCE—ASSUMED RISKS—NONSUIT.—Whether the risk was ordinarily incident to plaintiff's employment, and a patent risk, was a question of fact not determinable on motion for nonsuit. The plaintiff in this case might well assume that the man sent from Baltimore to Charleston to superintend the work understood how to do it with safety to the laborers.

7. NEW TRIAL—APPEAL—EXCEPTIONS.—An order refusing a motion for new trial on the minutes cannot be considered as having been based on grounds other than those disclosed by the record, nor considered at all where there is no exception to the order, or only questions of fact were involved.

8. EXCEPTIONS are not in proper form where they fail to present distinctly the legal proposition claimed to have been erroneously charged or refused to be charged.

9. MASTER AND SERVANT—APPLIANCES.—The trial judge charged that defendants were not bound to obtain the most improved appliances, but the jury must determine whether the means used were reasonably safe, and whether safer means than those used were at hand. *Held*, that this charge was not error.

10. CHARGING JURIES.—The judge having otherwise substantially charged that which was requested, it was not error in him to make such charge in his own language.

11. BURDEN OF PROOF—CONTRIBUTORY NEGLIGENCE is a matter of defence, and a party not being required to prove a negative, it is not incumbent on plaintiff to show that there was no contributory negligence on his part.

12. CHARGING JURIES.—There is no merit in an exception which charges error to the trial judge in designating partnership defendants as "the company," where such a designation had been used by the witnesses, and the jury could not have been led to suppose that the defendants constituted a corporation.

13. IBID.—MISSTATEMENT.—There was no misstatement of the testimony by the judge to the jury in this case, and if there had been, the remedy was not by appeal.

14. IBID.—FACTS.—The charge to the jury in this case was not a charge on the facts, and gave no intimation of the impression made by the testimony on the mind of the judge.

Before TOWNSEND, J., Charleston, February, 1894.

Action by Henry C. Whaley against D. L. Bartlett, T. J. Hayward, and E. L. Bartlett, partners as Bartlett, Hayward & Co., commenced by summons and atttachment September 21, 1893. The defendants requested the judge to charge as follows:

That in order to sustain his case, the plaintiff must prove by the preponderance of evidence: 1st. That the defendant was guilty of negligence, which caused the accident to him. *Renneker* v. *Railroad Co.*, 20 S. C., 221; *Glenn* v. *Railroad Company*, 21 S. C., 466; *Couch* v. *Railroad Co.*, 22 S. C., 562.

2d. That it is not enough to prove that the servants or agents employed by the defendants were guilty of negligence which resulted in the injury to the plaintiff.

3d. But also that the defendants were guilty of negligence in selecting such servants and agents, and when they chose them for the work entrusted to them, knew they were incompetent for the work entrusted to them, and were habitually negligent and known to be incompetent. *Darwin* v. *R. R. Co.*, 23 S. C., 537.

4th. That the risk plaintiff ran, in moving the section of standard, was, if "a risk ordinarily incident to the business," one he is "presumed to have contracted with reference" to, and

to have voluntarily incurred—and hence he cannot recover for his accident. Wood Master & Servant, p. 682; *Couch* v. *Railroad Company*, 22 S. C., 562.

5th. The risk of moving this section of standard, if "a patent risk," was one plaintiff was bound to guard himself against "by the exercise of his own skill and judgment," and not "blindly (to) rely on the skill of his master" to protect him from. Wood, p. 982; *Couch* v. *Railroad Company*, 22 S. C., p. 563

(6.) Admitting for the moment (which is denied and claimed to be disproved by the defendant) that the block and tackle was a preferable method of moving this section of standard, still there was no obligation on the part of Bartlett, Hayward & Co. to provide the latest and best improvements and methods to move this section of standard. Wood Master & Servant, § 331. They were only required to provide a proper and suitable method of moving this section. Wood, § 332; *Stack* v. *Patterson*, 6 Phil. (Pa.), 225.

7th. Whaley must also show that, even were there negligence on the part of the employees of Bartlett, Hayward & Co., that he used all reasonable efforts to avoid and fend off the results of this negligence. *Renneker* v. *Railroad Co.*, 20 S. C., 221; *Glenn* v. *Railroad Co.*, 21 S. C., 496; *Couch* v. *Railroad Co.*, 22 S. C., 562.

8th. If the jury find that he was injured by the negligence of the employees of Bartlett, Hayward & Co., still he cannot recover if these were his coservants. All are coservants who are engaged in the same kind of work, and if the jury find as a matter of fact that J. J. Kinsey was engaged like the others in moving this section of standard, then he was a coservant, and it matters not in other respects that J. J. Kinsey was the foreman of the men; he was merely first among equals in position, &c. *Wilson* v. *Merry*, L. R., 1 Scotch Ap., 326; Wood, § 436.

9th. If, in this particular movement of this section of standard, Whaley, J. J. Kinsey and others were "engaged in the same business," they are coservants, and for a hurt caused by his coservants, Whaley cannot recover. Wood, § 437. "The master is not liable to one servant for an injury inflicted by another servant in the same common service, unless he (the

master) can be charged with some degree of fault or negligence in their employment or retention."

10th. If you find that Whaley disobeyed J. J. Kinsey, in taking hold of this section of standard with his arms and not simply with his hands, then he cannot recover; for disobedience is of itself contributory negligence, and prevents Whaley from recovering from Bartlett, Hayward & Co.

The judge charged the jury as follows:

The case has taken a long time, but probably not longer than the importance of it requires. You have heard volume after volume of law discussed, a great deal of which does not apply to this case. So far as I understand the law, it is very simple, and the whole case is in a nut-shell, notwithstanding the time taken and the amount of testimony that has been taken and given to you. The injury is admitted on all sides; the plaintiff sues the defendant for $10,000 damages for this injury, charging that the injury was due to the negligence of the defendant. If the injury was caused by the negligence of the defendant or the defendant's agents, then the defendant must respond in damages. If the injury was caused by the coservants of the plaintiff, that is a different matter, to which I will refer after a while. The plaintiff must satisfy you by a preponderance of evidence that this injury was caused by the negligence of the defendant; if he contributed to it, he can not recover. You are to determine what part Bartlett, Hayward & Co. played in this matter—what part they took in inflicting injury upon the plaintiff—were they present, was any member of the company present; if you conclude that they were not present in person, were they present by their agents—did they have any one there to represent them?

That brings you to determine whether there was a man there who represented the defendant company and undertook to perform the duties which the company would have done if present, or had undertaken to do it. Was there any man there acting in that capacity, then, representing the defendant and supervising the work, and pursuing an occupation differing from those who were moving the iron? was there any boss or supervisor there acting for the company, it is for you to say. If you

find that there was such a person, no matter who he was, he then stands in the place of the defendant, and if he was guilty of negligence, then the company was guilty of negligence. You have some testimony tending to show that one Kinsey was a foreman. The word foreman has been used in speaking of him. You are to determine whether the testimony shows whether Kinsey was the boss, the supervisor or controller of the other hands. If you find that he was, then you will determine whether that person, Kinsey, or whoever you find to be the supervisor, was guilty of any negligence in inflicting this injury.

Now here is another general opinion. The defendant company was bound to furnish all the necessary appliances such as will insure reasonable safety to all engaged in that work. They were not bound to go out and buy all the most improved patterns, but they were bound to furnish such appliances as were reasonably safe. But, suppose they had supplied appliances that were reasonably safe, and they were carelessly used by this foreman, if you find there was a foreman or boss, although the appliances might be all right, yet, if they were carelessly used, then the company is liable. Now, you are to determine about the mode of letting down the iron testified to. You have heard the testimony of the witnesses; they have spoken of the two modes of lowering such pieces of iron, probably they have spoken of more than two modes, they have mentioned rollers and trucks and a gin pole. What conclusion you come to as to whether the mode employed in lowering that iron was reasonably safe with the hands employed, you will have to determine. Did they have other means at their command which were safer? As I have said, they were not bound to go out and get the most improved patterns, but they were obliged to furnish some means of moving that iron which was reasonably safe. If you conclude it was not reasonably safe, the company is liable; but if you conclude that the mode used was a reasonably safe one, then, was that plan carried out carefully, or was any one connected with it guilty of negligence in the performance itself? I ask your particular attention to that, becaue this transaction of letting down the iron was the very act in which the plaintiff was injured, and your most

careful attention is attracted to that transaction. Was any one connected with the company, or representing the company on that occasion, guilty of negligence, even if the appliances used were all right, safe and secure? Was there any one representing the company there who was guilty of negligence in the way the appliances were used? Was this boss or supervisor guilty of any negligence, that is for you to say. If he was guilty of negligence, he binds the company, and they must respond in damages.

You have heard about the rollers, the number of rollers, how they were situated, the weight of the iron, how one roller was kicked out. You have heard all that testimony, and you must conclude whether any one representing the company on that occasion was guilty of negligence which resulted in injury to the plaintiff.

Suppose you come to the conclusion that there was not a foreman there, no particular supervisor, but that Kinsey was not assisting the supervisor or director of the work, but was simply a sort of laborer among the workmen, and was coworkman with the others; if you come to that conclusion, then they were all coworkers, and if this man was injured by any act of his coservants, the company is not liable, unless they were guilty of negligence in employing careless workmen, not able to do what men employed for such purposes should reasonably be expected to do. Under such circumstances, the company would be responsible even if the injury occurred from the carelessness of the coservants. So, if you find that there was a foreman, and you find that the injury was inflicted, not by any carelessness of the foreman, but was done by the carelessness of the coservants who had hold of that piece of iron, then the company is not responsible, unless they were guilty of employing incompetent, careless, and negligent service.

It is contended that every laborer takes the risk of his employment, and as a general principle of law that is true, he takes the risk with the employment; but a man is not a mere machine; he has his eyes and senses and judgment, and I call your attention to that transaction, particularly of the plaintiff's approaching that piece of iron, if he looked at it, had judgment

about it as to its weight and how it was situated, there was nothing hidden about it. The law presumes that a man should be provided with proper machinery, and he is not bound to make investigations as to the sufficiency of the appliances, but if the matter is before his eyes, he cannot shut his eyes to it, he cannot run his head into the fire, and then sue somebody for it. You are to judge of all the facts. If, when they were assembled around the iron, the man was warned, and told to act in a certain way and he disobeyed that order, he cannot disobey, he cannot go contrary to the foreman's order, and then hold the company responsible. I do not remember anything else to say to you in reference to damages.

I will now charge you in the words of the plaintiff's 11th request: If the jury conclude that the injury resulted from the negligence of the defendant, then they should give the plaintiff such damages as he has proved in this case, not exceeding $10,000, and, in estimating such damages, they must take into consideration all the pain and anguish the plaintiff has suffered as a direct consequence of the injury, any permanent impairment of health, or injuries causing disfigurement, the necessary expense of surgical and medical aid, loss of time, and disability to pursue accustomed employment—that is to say, detrimental effects which naturally and proximately have resulted from the injury. The principle that a man cannot claim damages but up to the time of the suit does not apply in cases of this kind. I charge you that you have a right to find according to that charge which I have read you.

Defendants appealed on the following grounds:

I. Defendants except to the refusal of Judge Townsend to grant the nonsuit moved for in the case, and appeal therefrom on the grounds that there was no evidence whatever. A. That the defendants had, in the matter of the accident to the plaintiff, been guilty of any negligence whatsoever. B. That, on the contrary, the evidence shows: (1.) That the accident was caused by negligence on the part of the plaintiff in not doing as all the others employed in moving this section of standard did—stand off from the standard and thus escape.

(2.) That, if the accident was caused by the negligence of others beside Whaley himself, it was caused by his coworkers in quitting hold of the standard too soon. (3.) That, even if there was negligence on the part of the foreman, J. J. Kinsey, and the men employed in this work, still, there was not a particle of evidence that the foreman and men thus employed were "habitually negligent," or that the defendants, at the time they employed these persons, knew, or had reason to suspect, that these persons were, or were likely to be, negligent in the discharge of their duties respectively. (4.) That the risk run in moving this section of standard was not only a risk ordinarily incident to the business for which the plaintiff had hired himself, but, also, a patent one against which he was bound to guard himself by the exercise of his own skill and judgment. (5.) And further, that even if there was negligence on the part of the defendant, there was no evidence that Whaley used any reasonable effort, much less all reasonable efforts, to avoid and fend off the results of such alleged negligence.

The defendants also appeal from the charge of Judge Townsend, and move for new trial, in case the nonsuit be not granted, on the following grounds, viz:

I. That his honor erred in charging, "If the injury was caused by the negligence of the defendant, or the defendant's agents, then the defendant must respond in damages. * * * Was there any boss or supervisor then acting for the company? * * * If you find there was such a person, no matter who he was, he then stands in the place of the defendant, and, if he was guilty of negligence, then the company was guilty of negligence." Without limiting the above by the charges prayed for by the defendants, viz: the 2d, 3d, or 10th.

II. In charging: "You have some testimony tending to show that one Kinsey was the boss, the supervisor or controller of the other hands. If you find that he was, then you will determine whether that person, Kinsey, or whoever you find to be the supervisor, was guilty of any negligence in inflicting this injury." And again: "If you find there was a foreman or boss, although the appliances were all right, yet if they were

carelessly used, then the company is liable." And again: "If you conclude that the mode (of moving that iron) used was a reasonably safe one, then was that plan carried out carefully, or was any one connected with it guilty of negligence in the performance in itself? I ask your particular attention to that. * * Was any one connected with the company, or representing the company, guilty of negligence, even if the appliances used were all right, safe, and secure? Was there any one representing the company there who was guilty of negligence in the way the appliances were used? Was this boss or supervisor guilty of any negligencn, that is for you to say. If he was guilty of negligence, he binds the company, and they must respond in damages."

Without limiting the above, as prayed by defendants' requests to charge, marked 2d, 3d, and 10th, and just cited above; and further, without adding, unless the plaintiff was guilty of contributory negligence, or was otherwise barred from recovering damages by the risk he incurred in moving that iron, being a patent risk, or one incident to the work he had undertaken to do, &c. And further, and without limiting it by charging as requested by the defendants in the 5th request to charge.

III. When he charged, "What conclusion you come to as to whether the mode employed in lowering that iron was reasonably safe with the hands employed, you will have to determine," his honor erred in adding, "Did they have other means at their command which were safer?" The master being bound only to furnish such means "as are reasonably fit and safe," with no question whether he had "safer" means or not in his control. "It is only culpable negligence which makes the master liable, and not mere error of judgment."

IV. In failing to charge, as requested by the defendants in their 4th and 5th requests, but limiting this by the following charge: "But it is contended that every laborer takes the risk of his employment, and as a general principle of law, that is true; he takes the risk with the employment, but a man is not a mere machine; he has his eyes and senses and judgment, and I call your attention to that transaction, particularly of the plaintiff's approaching that piece of iron, if he looked at it,

had judgment about it as to its weight, and how it was situated, there was nothing hid about it."

V. In failing to charge, as requested by the defendant, that in order to recover anything: "7th. Whaley must also show that, even were there negligence on the part of the employees of Bartlett, Hayward & Co., that he used all reasonable effort to avoid and fend off the results of this negligence."

VI. In designating the private firm of Bartlett, Hayward & Co. throughout his charge as a "company," and thus in naturally, if inadvertently, leading the jury to believe that this was a case between a corporation and a poor man, and thus producing the prejudice against the defendants usual with jurors in all cases of individuals against corporations.

VII. In charging: "You have heard about the rollers, the number of rollers, the weight of the iron, how one roller was kicked out, you have heard all that testimony, and you must conclude whether any one representing the company on that occasion was guilty of negligence which resulted in injury to the plaintiff," as this implied strongly, and could not have failed to impress the jury with the idea that it was a fact in the case, that one roller had been "kicked out" from under the standard, and that this constituted negligence on the part of the defendants; whereas there is no evidence that any roller was "kicked out" at all, but only that the standard was "*side* of three rollers, and there was one roller a little further off than the others," and that the matter being called to Kinsey's attention, as a matter of judgment he thought it should be "rolled out," and did roll it out with his foot; whereas the facts of the case should have been left to the jury without any intimation of the judge's opinion. On the contrary, he should have added, as he dwelt on the facts, that the jury should bear in mind that "the law presumes that the master does his duty."

*Mr. H. E. Young*, for appellants.

*Messrs. Fitzsimons & Moffett*, contra.

November 2, 1894. The opinion of the court was delivered by MR. CHIEF JUSTICE MCIVER. The plaintiff brings this ac-

tion to recover damages for injuries sustained by him while in the employment of the defendants as a common laborer. In the complaint it is alleged that these injuries were caused by the carelessness and negligence of the defendants and their agents in handling and moving a large and heavy iron section of the standard or column of a gas holder, which was so carelessly and negligently thrown on, and allowed to fall upon, plaintiff as to crush him to the earth and fasten him beneath its weight, whereby serious injuries were sustained by the plaintiff. The acts of negligence specified in the complaint are stated as follows: "Said defendants negligently and carelessly failed to provide or furnish safe and suitable appliances for the work plaintiff was required and ordered to do, and particularly neglected to provide the necessary block and tackle apparatus for the moving of said large iron section of said gas holder; said defendants neglected to provide or furnish a sufficient number of laborers to move said iron section of gas holder in the manner in which it was attempted to be moved; said defendants, through their officers and agents, knowingly instructed and ordered plaintiff to remain in the performance of a dangerous, if not impossible, act, without informing him of the danger to which he was exposed."

The defendants answered, admitting their partnership as alleged; that they resided and did business in the city of Baltimore; that at the time of the disaster, they were engaged in the erection of a gas holder in the city of Charleston; and that plaintiff was in their employment as a laborer in the erection of said gas holder. But they deny all the other allegations of the complaint, especially that plaintiff's injuries were caused by any negligence on their part; and, on the contrary, allege that such injuries, if caused by the negligence of any one other than the plaintiff himself, were caused by the negligence of plaintiff's fellow-servants; but, in fact, they allege that the said plaintiff was injured solely by his own negligence.

The case came on for trial before his honor, Judge D. A. Townsend, and a jury, when quite a volume of testimony was introduced, which is all set out in the "Case." At the close of the testimony for the plaintiff, a motion for a nonsuit was

made, and after argument the motion was refused, and counsel for the defendant excepted. On what ground or grounds the motion was based, or what particular points were ruled by the Circuit Judge, if any, does not appear in the "Case." All that does there appear is that the motion was refused. The defendants then introduced their testimony, and after the defendants had offered certain requests to charge, set out in the "Case," the judge proceeded to charge the jury, as set out in the "Case," who rendered a verdict for eight thousand dollars in favor of plaintiff, when a motion for a new trial on the minutes was made and refused in the following order: "In this case defendants moved for a new trial, on the minutes, on account of excessive damages. The amount of the damages in such cases is so much a matter for the jury, that I am not inclined to disturb the verdict of the jury in this case, and must, therefore, refuse the motion." Judgment having been entered upon the verdict, the defendants appeal upon the several grounds set out in the record, which will not be repeated here, but which, together with the charge and the requests to charge, should appear in the report of the case. The exceptions make two general questions: 1st. Whether there was error in refusing the motion for a nonsuit? 2d. Whether there was any error in the judge's charge to the jury.

Before proceeding to consider the first question, we feel bound to say that, according to strict and proper practice, we would be under no obligation to consider any one of the alleged particular errors, in refusing the nonsuit, specifically pointed out in the exceptions *and no where else.* The proper function of this court, in such a case as this—a law case, pure and simple—is to review the rulings of the court below, and correct any errors of law found therein. Now where, as in this case, the Circuit Judge was not called upon to make, and, so far as appears, did not make any ruling upon these several points, there is nothing for this court to review. These views have long been settled in this State, and it is only necessary for us to cite a few of the most recent cases upon the subject. *Wingo* v. *Caldwell*, 35 S. C., 609; *Rollins* v. *Brown*, 37 S. C., 345; *Gentry* v. *Railroad Co.*, 38 S. C., 284. The proper

30—42

practice in such cases is to set forth in the "Case" the grounds upon which a motion for a nonsuit is based, together with the Circuit Judge's ruling, or his failing to rule, thereon. Any other course may work surprise to the plaintiff, as he might, if duly advertised, supply any deficiency, to say nothing of the injustice to the Circuit Judge. But in deference to the zeal with which this appeal has been pressed, we will waive this objection, and proceed to the consideration of his exceptions; having made the preceding remarks as a warning to the Bar of the dangers of such a practice.

The first exception is divided into two subdivisions, designated A and B. The first—A—is that there was no evidence that the defendants had been guilty of any negligence whatsoever. If anything can be regarded as settled in this State, it certainly is too well settled to need the citation of any authority, that a nonsuit should never be granted where there is *any* evidence tending to prove the plaintiff's cause of action. The question is not as to the sufficiency of the evidence or its credibility, nor is contradictory evidence to be considered, for these are all matters exclusively for the jury, and, on a motion for a nonsuit, the Circuit Judge has no authority even to consider, much less determine, any such questions, nor have we, when called upon to determine whether he has erred in refusing a motion for a nonsuit. Hence all the argument of appellant's counsel, based upon alleged contradictions in the plaintiff's testimony, or designed to show that one of his witnesses was not entitled to credit, goes for nothing. Our sole inquiry is, whether there was *any* evidence tending to show negligence, the gist of the action, on the part of the defendants, or any agent of theirs acting as their representative.

Now there can be no doubt that there was some evidence tending to show that the defendants, residing in Baltimore, did not undertake, in person, to do the work which they had contracted to perform, but, on the contrary, sent out to Charleston an agent, J. J. Kinsey, to perform it for them; that he was in entire charge of the work, and the same was done under his directions. If this evidence does not tend to show that Kinsey was the representative of the defendant in doing this particular

job of work, then we are at a loss to conceive what evidence would tend to show such fact. If, then, Kinsey was acting as the representative of the defendants, then the next inquiry is whether there was any evidence tending to show carelessness or negligence on his part. One of the specifications of negligence alleged in the complaint was the failure to provide safe and suitable appliances for the work required of plaintiff, especially in neglecting to use the necessary block and tackle apparatus for moving such a heavy piece of iron. There was evidence tending to show that Kinsey did not use, and refused to allow the third roller to be used, upon which the standard or column was to be let down, and according to the testimony of some of the witnesses, the use of the third roller would have made it much safer, especially for the plaintiff, who was at a point where it was proposed to place the third roller, for, according to the testimony, if this third roller had been used, the heavy piece of iron, when it fell, would have fallen upon this roller and not upon the plaintiff. And there certainly was testimony that the block and tackle apparatus, though at hand, and subsequently used in lowering other sections of the standard, was not used in lowering the standard which fell upon the plaintiff and injured him so seriously.

Again, there was testimony tending to show that an insufficint number of laborers were employed in lowering the standard—only eleven—which was fifty feet long and weighed 3,950 lbs., for, according to some of the testimony, it was exceedingly dangerous to attempt to lower such a weight by the hands of only eleven men. Here again counsel for appellants, in his argument here, has misconceived the true question in considering a motion for a nonsuit, for he has argued that the testimony shows (in which respect we think he is mistaken) that the piece of iron was lifted off the plaintiff, after the disaster occurred, by only four men. But, as we have intimated, we do not so understand the testimony. On the contrary, as we understand it, the testimony was that the piece of iron was lifted off the plaintiff by four men, who came out from the gas works, aided by the others who had been easing down the standard. Even, however, if counsel be right in his view of the testimony, that

would not avail him on a question of nonsuit, as the only effect would be that while there was some testimony tending to show that eleven men were not sufficient to ease down the standard from its position on the blocks to the rollers, there was other testimony tending to show that eleven men were sufficient, and this conflict could only be decided by a jury, and not by the Circuit Judge.   We are of opinion that there was testimony tending to show that Kinsey was the representative of the defendants, and tending to show negligence on his part; whether such testimony was sufficient for either of these purposes, is not for us to determine, as those were matters exclusively for the jury.   The first division of the first exception cannot be sustained.

The second division—B—is divided by counsel into five subdivisions.   The first and fifth of these subdivisions, as we understand them, purport to raise the question of contributory negligence, for in the first it is claimed that the evidence shows that the disaster was due to the negligence of the plaintiff, and in the fifth it is claimed that even if there was negligence on the part of the defendants, there was no evidence that plaintiff used any reasonable effort to avoid the result of defendants' negligence; in other words, neglected to use reasonable precautions to avoid the effect of defendant's negligence, which is really nothing more than a charge of contributory negligence.   Ever since the case of *Carter* v. *Railroad Co.*, 19 S. C., 20, if not before, it has been settled in this State, at least, that a nonsuit cannot be granted upon the ground that the evidence shows contributory negligence on the part of the plaintiff, for the very obvious reason, as stated in that case, that it involves the decision of a question of fact, of which, under our Constitution, the jury alone has cognizance in a law case.   In that case, the second ground of the motion for a nonsuit was that, even if there was some evidence of the defendant's negligence, yet plaintiff's testimony showed contributory negligence on the part of plaintiff's intestate, and that ground was distinctly overruled, the court holding as above.   This case has been followed in a number of other

cases; and, while the decisions elsewhere are conflicting, we, of course, are bound to follow our own decisions.

Two cases from our State have been cited by counsel for appellant to support his view—*Renneker* v. *So. Ca. R. R. Co.*, 20 S. C., 221, and *Darwin* v. *Railroad Co.*, 23 S. C., 537. But in the former case there was no motion for a nonsuit, and what is quoted from that case is what was said in considering the charge of the Circuit Judge, where, of course, the question of contributory negligence could properly be considered; and, in Darwin's case, so far from holding, or even intimating, that the question of contributory negligence could be considered on a motion for a nonsuit, the court expressly held the contrary. In that case there was a motion for a nonsuit based upon two grounds, the second of which was in these words: "Because the undisputed proof of the plaintiff established beyond a doubt that the deceased had been guilty of gross contributory negligence;" and the court, when it came to consider that ground, used this language: "The second ground upon which the nonsuit was claimed cannot be sustained under the case of *Carter* v. *C. & G. R. R. Co.*, *supra*. Contributory negligence is a matter of defence, and presents a question of fact to be solved by a jury." The quotations made by counsel from this case are taken from that part of the opinion in which the court was considering certain requests to charge—where, of course, the question of contributory negligence would be an appropriate inquiry—but they certainly do not afford any warrant for the position taken by counsel, especially in view of the fact that in that very opinion the court had expressly denied that position in the language above quoted.

The second subdivision of division B is that the evidence shows that if the accident was caused by the negligence of others besides the plaintiff himself, it was caused by his fellow-servants in quitting hold of the standard too soon. In the first place, whether the evidence shows this was a question for the jury and not for the court to decide on a motion for a nonsuit. And in the second place, so far as we can perceive, there was no evidence of any negligence on the part of plaintiff's colaborers in letting go the standard too

soon. On the contrary, the evidence rather shows that these coworkers held on to the standard as long as they could, with safety to themselves, do so, and only let go in time to escape the injury sustained by plaintiff.

The third subdivision claims that the evidence shows that even if there was negligence on the part of the foreman, Kinsey, and the men employed in the work, still there was no evidence that the foreman and men thus employed were "habitually negligent," or that the defendants knew, or had reason to suspect, that those persons were likely to be negligent in the discharge of their duties. Besides what we have said in considering the second subdivision, it seems to us that, inasmuch as we have held above that there was evidence tending to show that Kinsey was the representative of the defendants, and that there was evidence tending to show negligence on his part, the points made by this subdivision lose their pertinency, at least, upon the question of nonsuit. If Kinsey was the representative of the defendants, then his negligence is their negligence, and whether the defendants knew, or ought to have known, that he was negligent in the performance of his duties, is not pertinent to the inquiry.

The only remaining subdivision to be considered is the fourth, in which it is claimed that the evidence shows that the risk in moving this piece of iron was not only a risk ordinarily incident to the business for which the plaintiff was employed, but also a patent risk against which he was bound to guard himself by the exercise of his own judgment. Whether the evidence shows these facts, was a question which the Circuit Judge could not determine on a motion for a nonsuit, but which should be left to a jury. In view of the testimony that Kinsey was sent out from Baltimore to Charleston by the defendants to superintend the erection of the gas holder, involving the lifting of very heavy weights, it was but natural for the laborers whom he employed to assume that he understood his business, and that he would not expose them to any risks which could reasonably be avoided in doing the work for which they were employed. We are unable to discover any error on the part of

the Circuit Judge in refusing the motion for a nonsuit, and all the exceptions on that point must be overruled.

The counsel for appellant in his argument here has contended that the Circuit Judge erred in stating that the motion for a new trial on the minutes, was made simply on account of excessive damages, and he has insisted that the motion was made on the whole record, and he goes on to argue that, from a consideration of the whole testimony, the Circuit Judge should have granted a new trial, because the testimony was not sufficient to sustain the verdict. In the first place, there is nothing in the "Case" to sustain any such assertion. On the contrary, from what there appears, we are bound to conclude that the Circuit Judge was entirely right in stating that the motion was based on the ground of excessive damages. There is no exception to that statement, and, indeed, the "Case" fails to show that the order refusing the motion for a new trial was excepted to, even in the most general terms. Even in the grounds of appeal we find none presenting any such exception. But, in the second place, even if the assertion of counsel in his argument were supported by anything in the record, there is no proposition more fully settled in this State, than that the refusal of a Circuit Judge to sustain a motion for a new trial because of insufficiency of evidence to sustain the verdict, cannot be reviewed by this court.

We proceed, then, to a consideration of the several exceptions to the judge's charge. The first exception is made up of detached extracts from the charge, which are alleged to be erroneous, unless limited by the 2d, 3d, and 10th requests to charge, and the same may be said of the second exception, which, it is claimed, should have been further limited by adding, unless the plaintiff was guilty of contributory negligence, or was barred of a recovery by the risk being a patent risk, and one incident to the work he had undertaken to do, and also by the 5th request to charge. These exceptions are amenable to the objection that they fail to present *distinctly*, any erroneous legal proposition which was charged, or any legal proposition which was requested and refused to be charged. But they are also open to the more serious

objection that they confound two separate and distinct matters, which depend upon different legal principles: 1st. Where the negligence from which the injury results is the negligence of the master or his representative. 2d. Where such negligence is the negligence of a fellow-servant. In the first case, after the jury have reached the conclusion that a given person was acting as the representative of the master, their only other inquiry (except, of course, the amount of the damages,) is whether such representative has been guilty of the negligence complained of, and if so, then the master becomes liable, because the negligence of his representative is his own negligence; and hence the inquiry, whether the master was guilty of negligence in selecting such representative, is not pertinent to the inquiry. But, in the second place, if the negligence complained of is that of a fellow-servant, then a plaintiff must go further, and satisfy the jury that the master was guilty of negligence in employing such a fellow-servant with the plaintiff. These propositions are fully sustained by the cases of *Gunter* v. *Graniteville Co.*, as reported first in 15 S. C., 443, and next in 18 S. C., 262; *Calvo* v. *Railroad Co.*, 23 S. C., 526; *Boatwright* v. *Railroad Co.*, 25 S. C., 128, besides others that might be cited. It seems to us, that when the charge of the Circuit Judge is looked at as a whole, the only way in which it is proper to consider it, it will appear that these propositions were distinctly and properly charged, as well as the further additions as to contributory negligence, the risk being a patent risk, and one incident to the work which the plaintiff was employed to perform, and also as to the question of fact, whether Kinsey was a fellow-servant with plaintiff, or was acting as the representative of the defendants. These two exceptions must, therefore, be overruled.

The third exception cannot be sustained. In that part of the charge here complained of, the jury were simply instructed to inquire whether the means used for lowering the piece of iron was reasonably safe, and as a circumstance bearing upon that inquiry, they were to ask themselves the question whether safer means than those used were at hand; and this, it seems to us, was a very pertinent inquiry to the

proper solution of the question as to whether the means actually used were reasonably safe; and when the Circuit Judge went on and instructed the jury that the defendants were not bound to go out and obtain the most improved appliances, but were simply bound to use reasonably safe means, we see no proper ground for complaint on the part of appellants. See *Carter* v. *Oliver Oil Co.*, 34 S. C., at p. 214.

The fourth exception imputes error to the Circuit Judge in failing to charge, as requested in defendant's fourth and fifth requests, in relation to the risk being one ordinarily incident to the business, and being a patent risk. It seems to us that the judge did charge substantially as there requested, and the fact that he did not use the exact language in which the requests were couched, is, as has often been held, a matter of no consequence. See *Price* v. *Railroad Co.*, 38 S. C., 199, the most recent case upon the point.

The fifth exception alleges error in failing to instruct the jury as requested in defendant's seventh request. That request is based upon the erroneous assumption that a plaintiff is bound to negative any contributory negligence on his part. This is not only in conflict with the principles of logic, but, what is more important, it is in conflict with several distinct decisions of this court. A party is not required to prove a negative, and as to this particular matter, it is settled that contributory negligence is an affirmative defence, and the burden of proof is upon the defendant. It was so expressly held in *Carter* v. *Railroad Co.*, 19 S. C., 20, and in *Crouch* v. *Railway Co.*, 21 S. C., 495; and the same principle was recognized in *Donahue* v. *Enterprise R. R. Co.*, 32 S. C., 299, and in *Branch* v. *Railway Company*, 35 S. C., 405. This exception must, therefore, be overruled.

In the sixth exception appellants complain that the Circuit Judge throughout his charge designated the defendants as *the company*, which, as it is claimed, had the effect of conveying to the minds of the jury the impression that the defendants were a corporation, and "that this was a case between a corporation and a poor man, thus producing the prejudice against the defendants usual with jurors in all cases

of individuals against corporations." That this exception cannot be sustained is so patent as not to warrant more than a passing notice. It certainly imputes *no error of law* to the judge, and was not even an error of fact, as is manifest from the very name of defendant's partnership. Besides, defendants' own witnesses spoke of the defendants as *the company*, and, in fact, they were so designated throughout the testimony. In fact, so far as we can perceive, the language used by the Circuit Judge was not calculated to convey the impression that the defendants were a corporation; on the contrary, his language shows that in using the terms "the company," he referred to the partnership of Bartlett, Hayward & Co. So there is manifestly nothing in this exception.

The only remaining exception is the seventh, in which the complaint is of a twofold character: 1st. That the judge misstated the testimony to the jury. 2d. That in his statement of the testimony he conveyed to the jury his own impression of the facts adversely to the defendants. As to the first branch of this exception, even if it should be conceded that the judge did mis-state the testimony, it is very clear that this would constitute no error of law, of which this court could take cognizance. See *State* v. *Jones*, 21 S. C., 596; *State* v. *Milling*, 33 S. C., 16; *Rumph* v. *Hiott*, 35 S. C., 459, and *Simons &c. Co.* v. *Bank of Greenwood*, 41 S. C., 177. But, in justice to his honor, we must say we do not think that he did make any material mis-statement. The language used in speaking of the rejection of the third roller, which means to be specially objected to, is that the third roller was "kicked out," when the testimony was that Kinsey rolled it out with his foot. This slight difference in phraseology, which practically means the same thing, certainly does not warrant the charge of mis-statement.

The second branch of this exception, which imputes error to the Circuit Judge in charging on the facts, in violation of the constitutional provision upon that subject, is, we think, equally untenable. We are unable to find anything in the charge to indicate any impression which may have been made upon the mind of the Circuit Judge by the testi-

mony. On the contrary, we think the charge was eminently fair to both sides.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.